WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joyce Brown,<br><br>              Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of Social Security,<br><br>              Defendant. | No. CV-12-01125-PHX-JAT<br><br>**ORDER** |

      Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's ("ALJ") denial of Plaintiff's Title II application for disability benefits.

**I.      PROCEDURAL BACKGROUND**

      On February 20, 2009, Plaintiff filed an application for disability benefits, asserting she had been disabled since September 1, 2008. (TR 112). Plaintiff's application was denied initially and on reconsideration. (TR 72, 77-78). On November 16, 2009, Plaintiff requested a hearing. (TR 81). On December 21, 2010, a hearing was held before an ALJ. (TR 39-66). On February 15, 2011, the ALJ issued an unfavorable decision. (TR 12-20). The Appeals Council denied Plaintiff's request for review of the hearing decision on April 26, 2012. (TR 1-3).

      On May 29, 2012, Plaintiff filed her Complaint for Judicial Review of the Administrative Determination of Claim, which is the subject of this appeal. (Doc. 1). Plaintiff argues that the Court should vacate the Administrative Law Decision because:

(1) the ALJ did not properly consider the medical evidence and opinions when determining Plaintiff's Residual Functional Capacity ("RFC") and substantial evidence does not support the ALJ's RFC assessment; (2) the ALJ erred in rejecting Plaintiff's subjective complaints; and (3) the ALJ did not provide substantial evidence to support his finding that Plaintiff can perform her past work as a rental car driver and courier.

## II.   LEGAL STANDARD

The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the administrative law judge's conclusions and the evidence that detracts from the administrative law judge's conclusions. *Id.* If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination for that of the ALJ. *Id.* Additionally, the administrative law judge is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before this Court, substantial evidence supports the Commissioner's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

### A.   Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

## B.      Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721 (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721.

The five steps are as follows:

1.      First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2.      If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities means the "abilities and aptitudes to do most jobs." 20 C.F.R. § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." 20 C.F.R. § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

3.      Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the

regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. 20 C.F.R. at § 404.1520(d).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). 20 C.F.R. § 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick,* 157 F.3d at 721.

### III. ANALYSIS

In this case, the ALJ found, at each step respectively, that Plaintiff: (1) had not engaged in substantial gainful activity since September 1, 2008; (2) had the following severe impairments considered in combination: fibromyalgia, chronic fatigue, multi-level degenerative disc disease, cervicalgia, depression, an anxiety disorder, and dependent personality disorder; (3) does not have an impairment, individually or in combination, that meets or medically equals one of the impairments listed in the regulations; (4) had the RFC to perform the exertional requirements of light work (with restrictions of light work as defined in 20 C.F.R. 404.1567(b) and was further limited by no crouching,

stooping, kneeling, crawling, bending, and climbing; (5) is able to perform the mental demands of semi-skilled work; (6) is capable of performing her past relevant work as a courier and a rental car driver.  As a result of this analysis, the ALJ found that that Plaintiff was not disabled as defined in the Social Security Act.

As noted above, Plaintiff argues that the Court should vacate the Administrative Law Decision because:  (1) the ALJ did not properly consider the medical evidence and opinions when determining Plaintiff's Residual Functional Capacity ("RFC") and substantial evidence does not support the ALJ's RFC assessment; (2) the ALJ erred in rejecting Plaintiff's subjective complaints; and (3) the ALJ did not provide substantial evidence to support his finding that Plaintiff can perform her past work as a rental car driver and courier.

The ALJ determines RFC based upon medical records, physicians' opinions, and the claimant's description of her limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a)(3).  Plaintiff argues that the RFC the ALJ determined is not supported by substantial evidence because the ALJ: (1) improperly rejected Plaintiff's subjective complaints; (2) improperly rejected the opinion of Plaintiff's treating physician, Dr. Bennett; and (3) failed to accept or reject the opinions of state agency doctors and a consulting examiner.  (Doc. 14 at 24).

### A. Whether the ALJ erred in Rejecting Plaintiff's Subjective Complaints

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to be the cause of some pain, the ALJ "'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-750 (9th Cir. 1995) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc)).  The ALJ must make specific findings based on the record for discounting a claimant's subjective complaints.  *See Savage v. Astrue*, No. CV-11-2103-PHX-JAT, 2013 WL 551461, at *7 n.1 (D. Ariz. Feb. 13, 2013).  Once that evidence is produced, the adjudicator may not reject a claimant's subjective complaints based solely

on a lack of objective medical evidence fully corroborating the alleged severity of the pain. *Bunnell v. Sullivan,* 947 F.2d 941, 343, 345 (9th Cir. 1991) (citing *Cotton,* 799 F.2d at 1407). The claimant does not have to produce objective medical evidence of the subjective symptoms, their severity, or their causal relationship to the medically-determinable impairment. *Smolen*, 80 F.3d at 1282 (citing *Bunnell*, 947 F.2d at 345, 347-48).

In this case, the ALJ found there was medical evidence of underlying impairments that would be reasonably likely to cause pain, but found that Plaintiff's subjective complaints were not fully credible. (TR at 18). The question then is whether the ALJ discredited Plaintiff's testimony of pain solely because such pain was not supported by objective medical evidence.

In evaluating the credibility of subjective symptoms, the ALJ must consider the claimant's work record, observations by treating and examining physicians about the nature, onset, duration, and frequency of symptoms; triggering and aggravating factors, and functional restrictions and symptoms. *Smolen*, 80 F.3d at 1284. The ALJ also may consider the claimant's reputation for truthfulness or untruthfulness, any of her prior inconsistent or less than candid statements, any of her unexplained or inadequately explained failure to seek or follow a course of treatment, and her daily activities. *Id.* "[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities." *Id.* (citing *Fair*, 885 F.2d at 603).

Plaintiff argues the ALJ ignored her testimony that she performs daily activities on good days only. (Doc. 14 at 22; TR 56-57). She contends a claimant does not have to be bedridden in order to qualify for benefits. Plaintiff further argues that the ALJ ignored her testimony that her ability to work is limited by work absences. (Doc. 14 at 22). Plaintiff argues the ALJ cites to no evidence that work activity, which she says is less than substantial gainful activity proves her ability to work more. (*Id.*). Plaintiff also

argues that working to the best of her ability, together with her excellent work record, speaks to her credibility. (*Id.*). Finally, she argues the Defendant's statement that Plaintiff's work activity shows she is not disabled conflicts with the Social Security Regulations, which encourage a disabled person to work. (Doc. 18 at 7-8).

However, the ALJ provided specific findings supported by the record to show Plaintiff's subjective complaints about her daily activities are not fully credible. (TR 18). The ALJ pointed to evidence in the record that Plaintiff is able, despite her impairments, to engage in numerous daily activities including: laundry, dishes, light housekeeping, shopping, driving, attending church, and caring for her husband and cat. (*Id.*). Further, the ALJ referred to Plaintiff's husband's Third Party Function Report dated March 3, 2009. (TR 18, 165). The ALJ found Mr. Brown provided little support for his wife's alleged disability by reporting her able to perform most activities of daily living. (*Id.*). The ALJ noted also noted that Plaintiff was working during much of the adjudicatory period, at a level surpassing or closely approaching the presumptive monthly level for substantial gainful activity, and that this work level attested to her physical and mental impairments being not as severe as alleged. (TR 14, 18).

Based on the foregoing, the ALJ made specific findings based on the record for discounting Plaintiff's subjective complaints.

### B. Whether the ALJ Erred in Rejecting the Opinions of Dr. Bennett

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. A treating physician's opinion is usually entitled to "substantial weight." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

1  evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other
2  hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with
3  other substantial evidence in the record," then it should not be given controlling weight.
4  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

5  Substantial evidence that contradicts a treating physician's opinion may consist of
6  either (1) an examining physician's opinion or (2) a nonexamining physician's opinion
7  combined with other evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). In
8  the case of an examining physician, "[w]hen an examining physician relies on the same
9  clinical findings as a treating physician, but differs only in his or her conclusions, the
10 conclusions of the examining physician are not substantial evidence." *Orn*, 495 F.3d at
11 632 (citing *Murray v. Heckler*, 722 F.2d 499, 501–02 (9th Cir. 1984)). To constitute
12 substantial evidence, the examining physician must provide "independent clinical
13 findings that differ from the findings of the treating physician." *Id.* (citing *Miller v.*
14 *Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)). Independent clinical findings can be either
15 "diagnoses that differ from those offered by another physician and that are supported by
16 substantial evidence, . . . or findings based on objective medical tests that the treating
17 physician has not herself considered." *Id.* (citing *Allen v. Heckler*, 749 F.2d 577, 579
18 (9th Cir. 1984); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

19 "The opinion of a nonexamining physician cannot by itself constitute substantial
20 evidence that justifies the rejection of the opinion of either an examining physician or a
21 treating physician." *Lester*, 81 F.3d at 831. Such an opinion is only substantial evidence
22 if supported by "substantial record evidence." *Id.*

23 If the ALJ determines that a treating physician's opinion is inconsistent with
24 substantial evidence and is not to be given controlling weight, the opinion remains
25 entitled to deference and should be weighed according to the factors provided in 20
26 C.F.R. § 404.1527(d). *Orn*, 495 F.3d at 631; SSR 96–2p at 4. These factors include: (1)
27 the length of the treatment relationship and the frequency of examination; (2) the nature
28 and extent of the treatment relationship; (3) the extent to which the opinion is supported

1    by relevant medical evidence; (4) the opinion's consistency with the record as a whole;
2    and (5) whether the physician is a specialist giving an opinion within his specialty. 20
3    C.F.R. § 404.1527(d).

4    If a treating physician's opinion is not sufficiently supported by medical evidence
5    and other substantial evidence in the case, however, the ALJ need not give the opinion
6    controlling weight. *Orn*, 495 F.3d at 631. Furthermore, if the treating doctor's opinion is
7    contradicted by another doctor, the ALJ may reject the treating doctor's opinion by
8    giving specific and legitimate reasons for doing so. *Id.* at 632. Inconsistencies and
9    ambiguities within the treating physicians' own opinion create such "specific and
10   legitimate" reasons for rejecting the opinion. *Matney on behalf of Matney v. Sullivan*,
11   981 F.2d 1016, 1020 (9th Cir. 1992).

12   Plaintiff objects to the ALJ's rejection of Dr. Bennett's opinions on the "ultimate
13   issue of disability," regarding (1) her physical ability to function; and (2) her mental
14   ability to function.

15   The ALJ specifically rejected Dr. Bennett's opinion about Plaintiff's physical
16   ability to function. (TR 18). Regarding physical ability to function, Dr. Bennett's
17   opinion is that Plaintiff has significant impairments. (TR 372-77). Dr. Bennett found
18   that Plaintiff: is likely to have good and bad days, could occasionally lift up to twenty
19   pounds, requires five to ten minutes of rest every forty-five minutes, needs to shift
20   positions, must walk five minutes every forty-five minutes, can sit forty-five minutes, can
21   stand thirty minutes, can sit a total of about four hours out of eight hours, can stand/walk
22   a total of about two hours out of eight hours, is incapable of even a low stress job, takes
23   medications that will frequently interfere with her attention and concentration (Klonopin
24   and Cymbalta), has pain that will frequently interfere with her attention and
25   concentration, and would miss work more than four days per month due to her
26   impairments. (*Id.*).

27   A state agency medical consultant contradicted Dr. Bennett's opinion. On May
28   29, 2009, Jonathan Nordlicht, M.D., assessed Plaintiff's physical ability to function. (TR

339-44). Dr. Nordlicht found Plaintiff able to frequently lift/carry ten pounds, occasionally carry twenty pounds, stand/walk at least two hours in an eight hour work day, and sit for six hours in a work day. (TR 340). Dr. Nordlicht found no limitation in any other area, and found Plaintiff's allegations about her physical ability to function only partially credible. (TR 341-44). On September 15, 2009, another provider reviewed and affirmed Dr. Nordlicht's opinion. (TR 348). The ALJ noted he gave these opinions weight to the extent they were consistent with the medical evidence and findings in the record. (TR 19).

The ALJ provided specific and legitimate reasons for rejecting Dr. Bennett's contradicted opinion. (TR 19). First, while Dr. Bennett's RFC assessment[1] limits Plaintiff to less than sedentary work, the ALJ found Dr. Bennett's notes (in exhibits 5F, 13F and l5F)[2] in conflict with such severe functional limitations. (TR 19). Second, the ALJ stated that the record showed that Plaintiff's fibromyalgia pain has generally been well controlled by medication. (TR 19). Third, the ALJ noted that, on September 17, 2009, Plaintiff rated her pain level at 4/10 (in exhibit 13F/12). (TR 19). Finally, the ALJ provided the reason that, on May 20, 2010, Dr. Bennett described the claimant's fibromyalgia course as "decreasing," with pain that is "moderate," and Plaintiff rated her pain level at 5/10 (in exhibit l5F/1). (TR 19).

Plaintiff argues that the ALJ "cherrypick[ed]" record notations to support his desired RFC finding. (*Id.* at 17). In applying the substantial evidence test, the Court is required "to look at the record as a whole and not merely at the evidence tending to support a finding." *Cox v. Califano*, 587 F.2d 988, 989-90 (9th Cir. 1978) (citation omitted). Plaintiff argues that the ALJ "cherrypicked" because he cited treatment notes written when Plaintiff was doing well, but failed to address the entirety of Dr. Bennett's

---

[1] Dr. Bennett completed a Physical Residual Functional Capacity Form on August 27, 2010. (TR 372-77).

[2] These exhibits referenced by the ALJ refer to Dr. Bennett's office treatment records of January 12, 2009, September 9-17 2009, and February 18-May 20, 2010. (TR 312-14, 349-62, 364-71).

- 10 -

1    notes that show something different.  (Doc. 14 at 16).  Specifically, Plaintiff refers to Dr.
2    Bennett's records of:  September 17, 2009, when her pain level was 4/10, but also
3    showing fatigue at 8/10, and one to two hours morning stiffness, neck stiffness,
4    weakness, depression, and anxiety (TR 360), and May 20, 2010 showing decreasing
5    fibromyalgia and moderate pain, but also showing sleep issues, fatigue at 8/10, flat affect,
6    18/18 positive tender points, and Plaintiff's report of good and bad days (TR 364-66).
7    (*Id.* at 16).  Plaintiff also cites to Dr. Bennett's notes showing:  increasing fibromyalgia
8    (severe, aching all over; constant low back pain aggravated by exertion and relieved by
9    rest; leg pain worse with walking; numbness progressing with walking; and balance
10   issues), fatigue 8/10, headaches, neck pain and stiffness, weakness, depression, anxiety,
11   and good and bad days (*Id.* at 16; Doc. 18 at 5; TR 312, 353-55, 360, 364-71).
12        In response, Defendant argues that the ALJ properly rejected Dr. Bennett's
13   opinion for several reasons.  (Doc. 17 at 11).  First, Defendant argues Plaintiff's pain
14   rating of 5/10 should be accorded weight because consistent medical signs are to be given
15   such weight.  (*Id.*).  Second, Defendant argues a physician's opinion can be discounted
16   when it is inconsistent with other notes from that physician.  (*Id.*).  Third, Defendant
17   argues the ALJ can discount a treating physician's opinion that is inconsistent with the
18   claimant's activity level and Plaintiff admits to working twenty to thirty hours per week
19   as a rental car driver, doing housework and laundry, preparing meals, caring for pets,
20   visiting with friends, playing games, using a computer, going for walks, shopping, and
21   going swimming.  (*Id.*).
22        Plaintiff further argues that the ALJ failed to give weight to objective information
23   in Dr. Bennett's records.  First, she contends that the ALJ failed to give proper weight to
24   Dr. Bennett's status as Plaintiff's treating physician for many years, and status as a board
25   certified rheumatology specialist.  (Doc. 18 at 4-5).  Second, Plaintiff argues the ALJ
26   failed to consider objective tests Dr. Bennett relied upon including 18/18 positive tender
27   points on repeated examinations and diagnostic studies.  (Doc. 14 at 16-17).  The
28   diagnostic studies included:  lumbar back x-rays in October 2008 showing osteopenia,

1 moderate degenerative disk disease, facet joint arthrosis, and minimal narrowing of the
2 left hip joint space (TR 310); lumbar MRI in January 2009 showing multi-level mild-to-
3 marked degenerative changes and disc desiccation (with flattened undersurface of the
4 left-sided nerve roots and mild-to-moderate bilateral stenosis) (TR 361); and cervical
5 neck x-ray in January 2009 showing moderate-to-severe spondylosis, and osteophytes
6 (TR 362). (Doc. 14 at 5, 16-17; Doc. 18 at 2, 5).

       The ALJ's specific and legitimate reasons for rejecting Dr. Bennett's opinion are supported by substantial evidence in the record. While the notations that Plaintiff was doing well are less than the number of notations of abnormal findings, most of the abnormal findings are based on subjective reports. Pain level, fatigue, morning stiffness, neck stiffness, weakness, depression, sleep issues, anxiety, level of fibromyalgia symptoms, positive tender points, and good and bad days all depend upon subjective reports from Plaintiff. As discussed above, the ALJ provided specific findings based on the record for discounting Plaintiff's subjective complaints and the overwhelming weight of the record depends upon those subjective complaints. As such, the ALJ's specific and legitimate reasons for rejecting Dr. Bennett's opinion about Plaintiff's physical ability to function are supported by substantial evidence from the record. Thus, the ALJ provided specific and legitimate reasons supported by substantial evidence in the record regarding Plaintiff's physical ability to function. The ALJ further pointed out that Plaintiff worked during much of the adjudicatory period at a level surpassing or closely approaching the presumptive monthly level for substantial gainful activity, and that this work attests to her physical and mental impairments being not as severe as alleged. (TR 14, 18). Accordingly, the ALJ did not err in rejecting Dr. Bennett's opinion about Plaintiff's physical ability to function.

       The ALJ also rejected Dr. Bennett's opinion about Plaintiff's mental ability to function. (TR 18). Dr. Bennett found significant limitations to Plaintiff mental ability to function.[3] Dr. Bennett found Plaintiff has: good to fair abilities in eighteen work-related

---

[3] Dr. Bennett completed the Mental Assessment of Ability to do Work-Related

- 12 -

1  areas of mental functioning; reduced cognition and stress increases due to pain from
2  fibromyalgia; depression leading to poor attention span and decreased social interaction;
3  and fatigue that may be overwhelming or preclude attention span and social interaction.
4  (TR 378-79).

5  Two mental health providers contradicted Dr. Bennett's opinion. Michael Rabara, Psy.D., a clinical psychologist and consulting disability examiner, and Patrice Solomon, Ph.D., the state agency's psychological consultant, examined Plaintiff and concluded she is not significantly limited in any significant area of mental activity. (TR 19, 325-38, 315-21). Dr. Rabara found Plaintiff has: goal-directed and logical thinking; fair mood and appropriate affect; and no unusual perceptual disturbances. (TR 317). Dr. Rabara found Plaintiff fully oriented and able to recite two current events, with memory, concentration, and ability to do simple calculations intact. (TR 317). Dr. Rabara estimated Plaintiff to be of average intelligence, with fair attention span and short-term memory. (TR 318). Dr. Rabara found no work-related restrictions or limitations in Plaintiff's mental ability to function and noted this was especially true because Plaintiff reported that staying active helped her. (TR 319).

Dr. Solomon also contradicted Dr. Bennett. Dr. Solomon found Plaintiff has only mild restrictions in her activities of daily living; no social function difficulty; and moderate concentration, persistence and pace. (TR 333). Dr. Solomon concluded Plaintiff—despite having affective and anxiety-related disorders with co-existing non-mental impairment—provides credible allegations, but not at the severity that would preclude adaptation to the employment setting. (TR 335). Dr. Solomon completed a Mental RFC form and found no significant limitations in any category. (TR 336-38). Dr. Solomon found Plaintiff: capable of understanding and performing simple and detailed tasks; capable of adequate concentration, persistence, and pace for the work week; unimpaired in social skills; and able to adapt to the work environment despite mild anxiety and depression. (TR 336-38).

---

Activities Form on August 27, 2010. (TR 378-80).

The Court must evaluate whether the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Bennett's contradicted opinion about Plaintiff's mental ability to function. *Reddick*, 157 F.3d at 725.

The ALJ provided specific and legitimate reasons for rejecting Dr. Bennett's opinion, namely: (1) Dr. Bennett is not a mental health professional (he is a rheumatologist). (TR 18); (2) Dr. Bennett's opinion is unsupported by the great weight of the evidence in the record on and after September 1, 2008 (Plaintiff's reported date of onset of disability). (TR 18-19); and (3) both Dr. Rabara and Dr. Solomon concluded Plaintiff "is not significantly limited in any significant area of mental activity." (TR 19).

Plaintiff argues that the ALJ's reasons for rejecting Dr. Bennett's opinions are not supported by substantial evidence in the record. Plaintiff argues that her treating physician's opinion about her mental abilities constitutes competent psychiatric evidence—even though Dr. Bennett is not a psychiatrist—because his conclusions are based on clinical observations. In support of this argument, Plaintiff points to Dr. Bennett's treatment of her depression by prescribing and monitoring anti-depressants. (Doc. 14 at 17). Plaintiff further argues that Dr. Bennett's opinion includes mental limitations due not only to depression and anxiety, but also to fibromyalgia, which causes decreased cognition, stress, and fatigue. (Doc. 18 at 3-4). Plaintiff concludes that, as a board certified rheumatologist, Dr. Bennett evaluated Plaintiff's mental ability to function as part of the whole of her condition, instead of in the isolation of depression and anxiety. (*Id.*). Plaintiff also argues the ALJ failed to address Dr. Bennett's examination notes showing depressive symptoms. (Doc. 18 at 2-3).

In response, Defendant argues that the ALJ considered Dr. Bennett's mental assessment and properly decided not to accord it controlling weight. (Doc. 17 at 9 (relying on 20 C.F.R. § 404.1527(c)(5))). Defendant argues that the ALJ properly discounted Dr. Bennett's opinion because the ALJ can consider Dr. Bennett's specialty as his opinion is inconsistent with other objective medical evidence in the record as a whole, and because it is inconsistent with the opinion of Dr. Rabara, a mental health specialist.

(*Id.* (relying on 20 C.F.R. § 404.1527(c)(4); and *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007)). Finally, Defendant argues Dr. Bennett's opinion is inconsistent with his own examination findings. (Doc. 17 at 10). Defendant points to Dr. Bennett's note in September 2008 in which he observed normal mental status despite Plaintiff's somewhat flat affect. (*Id.*) Next, in February and May 2010, Dr. Bennett again observed a normal mental status and found Plaintiff fully alert and oriented, with no impairment of recent or remote memory. (*Id.*). Finally, Dr. Bennett never recommended any more aggressive treatment for disabling mental problems; rather, he merely continued to refill Plaintiff's prescriptions for Cymbalta. (*Id.*).

These findings in the record, and noted by the Defendant, provide substantial evidence in support of the specific and legitimate reasons given by the ALJ for rejecting Dr. Bennett's opinion.

### C. Whether the ALJ Properly Found that Plaintiff can Perform her Past Relevant Work as a Rental Car Driver and Courier.

The ALJ found Plaintiff able to perform full-time light work because: a) she is able to meet the mental demands of semi-skilled work; and b) she is able to meet the physical demands of light work with restrictions based upon the definition of light work in 20 C.F.R. § 404.1567(b), and with the further limitations of no crouching, stooping, kneeling, crawling, bending, and climbing. ((Doc. 14 at 14, 23; TR 17).

Plaintiff asserts she is unable to perform full-time work. (Doc. 14 at 23). She relies for this assertion upon Dr. Bennett's opinions that she would not be able to work full time and upon the vocational expert's answers to hypothetical questions at the hearing. (Doc. 14 at 23). At the hearing, and at the suggestion of the ALJ, Plaintiff's attorney asked the vocational expert hypothetically: if Dr. Bennett's opinion is accepted as true, would Plaintiff be able to perform work activity? (Tr. 64-65). The expert answered the question twice, once regarding Dr. Bennett's opinion about Plaintiff's physical ability to function and once regarding Dr. Bennett's opinion about Plaintiff's mental ability to function. (*Id.*). The vocational expert answered to both hypotheticals

1   that, if Dr. Bennett's opinion is accepted as true, Plaintiff is unable to work. (*Id.*). Thus,
2   the vocational expert's opinion that Plaintiff is unable to work depends entirely on Dr.
3   Bennett's opinions about Plaintiff's physical ability to function and mental ability to
4   function.  As discussed above, the ALJ provided specific and legitimate reasons
5   supported by substantial evidence in the record for rejecting Dr. Bennett's opinions about
6   those two areas of Plaintiff's ability to function.  Thus, Plaintiff's arguments that she
7   cannot work full time, based on Dr. Bennett's opinions and the vocational expert's
8   testimony, both fail.

9   The ALJ found at step four that Plaintiff has the RFC to return to her former work
10  as a courier and as a rental car driver. (TR at 18-20). Plaintiff objects to this finding
11  because (1) the ALJ said at the hearing he would consider Plaintiff's work as a courier as
12  a work attempt rather than past relevant work, and (2) her ability to perform past relevant
13  work as a courier and as a rental car driver is not supported by the record. (Doc. 14 at
14  23).

15  Plaintiff argues that, at the hearing, the ALJ said he would consider Plaintiff's past
16  jobs as file clerk, courier, and store greeter to be work attempts; and would consider only
17  her work as a credit union teller and rental car driver as past relevant work. (Doc. 14 at
18  12; Tr. 61-62). Plaintiff maintains that, as a result of this statement, she did not further
19  address her inability to work as a courier. (Doc. 14 at 23). Nonetheless, at step four, the
20  ALJ found Plaintiff capable of past relevant work as a courier and as a rental car driver,
21  and found these jobs do not require work-related activities precluded by Plaintiff's RFC.
22  (TR at 19). Plaintiff contends that, by changing his mind after the hearing and without
23  notice regarding whether courier was past relevant work, the ALJ deprived her of the
24  opportunity to show why she could no longer perform courier work, and prejudiced her
25  ability to show her disability. (Doc. 14 at 23).

26  Defendant responds this was a harmless error because the ALJ also found that
27  Plaintiff could perform past relevant work as a rental car driver, which everyone agrees is
28  properly considered past relevant work for Plaintiff. (Doc. 17 at 16; TR 61).

1 The Court agrees that the ALJ's reliance on Plaintiff's past relevant work as a courier is harmless error because the ALJ also found that Plaintiff could perform past relevant work as a rental car driver. The ALJ found Plaintiff able to perform past relevant work as a rental car driver. The ALJ's additional inclusion of past relevant work as a courier in his opinion does not alter that finding.

Plaintiff also argues the ALJ's finding that Plaintiff can perform past relevant work as a courier and as a rental car driver is not supported by the record. (Doc. 14 at 23-24). Plaintiff notes the vocational expert's testimony at the hearing that Plaintiff's past relevant work included: teller, light and skilled; file clerk, light and semi-skilled; car rental driver, light and semi-skilled; and courier, light and unskilled. (Doc. 14 at 11; TR 60-61). In answering hypothetical questions, Ms. Richter testified that, if limited to light work with postural restrictions, Plaintiff could do the rental car driving job. (Doc. 14 at 11; TR 62). The ALJ found that the vocational expert's testimony is consistent with information contained in the *Dictionary of Occupational Titles.* (TR 19). As noted above, the ALJ properly discounted Dr. Bennett's opinions and Plaintiff's subjective complaints that she cannot do light and semi-skilled work. (TR 17). The rental car driver job is consistent with the ALJ's determined RFC that Plaintiff can perform light and semi-skilled work. (TR 19). Thus, there is support in the record for the ALJ's determination that Plaintiff can perform the job of rental car driver.

## IV. CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff is not disabled within the meaning the Social Security Act.

///

//

/

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 29th day of July, 2013.

James A. Teilborg
Senior United States District Judge